UNITED STATES BANKRUPTCY COURT
DISTRICT OF KANSAS

| In re: | |
|--------|--|
| DOCUPLEX, INC. | CASE NO.: 22-10734-11 |
| DEBTOR. | |

## DEBTOR'S PLAN OF REORGANIZATION DATED JANUARY 16, 2023

COMES NOW Docuplex, Inc., by and through its counsel David Prelle Eron of Prelle Eron & Bailey, P.A., and hereby files its chapter 11 plan.

### THE PLAN

The Debtor hereby proposes a Plan of adjustment of its debts pursuant to Subchapter V, Chapter 11, Title 11 of the United States Code. The terms contained in the Plan shall be defined as set forth herein, or as set forth on Exhibit D attached hereto. Where not so defined, all terms herein shall have the definitions used in the Bankruptcy Code (Title 11), the Federal Rules of Bankruptcy Procedure, and the local rules of the United States Bankruptcy Court for the District of Kansas. All other terms shall have their ordinary dictionary meaning as may be appropriate in the context of the phrase, sentence, or paragraph in which such terms are found.

### A. General Provisions

#### 1. Description and History of the Debtor's Business.

Debtor owns and operates a print and mailing company, providing all varieties of commercial printing, finishing, and direct mailing services. Debtor is one of the largest providers of these services in Wichita, Kansas. Debtor does not own any real property, but owns a significant amount of furniture, fixtures, machinery, equipment, rolling stock, and inventory used in the operation. On the Petition Date, the Debtor employed 28 people. Debtor's financial affairs are managed by its Controller, Gina Divine (aka Gina Cherry), who signed the Debtor's Schedules and Statements herein.

Debtor was founded by Gerald K. Ewy in 1998. Upon Gerald's passing, his widow sold the stock in the Debtor to the couple's son, Jay Ewy, in December 2010. Jay Ewy is the sole shareholder, director, and officer of the Debtor. At the time that Jay took over the operations, the Debtor had been generating significant profits. Over the following decade, print services and mail gradually declined in volume, both locally and nationally, as electronic communications and media gained substantial market share. Debtor's revenues declined from over $6 million in 2016 to approximately $3 million in 2022. The Debtor did not initially adapt to declining revenues. Jay's shareholder distributions remained high, as did discretionary spending and charitable giving.

Debtor's debt service payments also remained high. All of this led to loan payment defaults, lease defaults, and escalating unpaid receivables. Shortly before the Petition Date, Equity Bank had taken substantial payments out of the Debtor's bank accounts, imposed default interest (wrongly), and requested that Jay pledge his homestead to secure the loan to the Debtor. Other creditors had also begun to take enforcement actions.

On September 2, 2022, the Debtor filed a Voluntary Petition for Relief under Chapter 11, Subchapter V, of the Bankruptcy Code. Debtor took immediate and substantial action to "right the ship." Jay's income was reduced to less than 1/3 of its historic rate. Debtor terminated a disadvantageous contract with EFI, set its adequate protection payments to Equity at $10,000/mo., and terminated its charitable giving programs. The results have been dramatic. Since the filing of this Case, Debtor has received significant community and customer support, generating over $190,000 in net income during the four months of operating in Chapter 11. Debtor has also increased its Cash Collateral borrowing base by over $185,000, increasing its bank balances by almost $73,000 and its accounts receivable by over $117,000 since the Petition Date. To be clear, the fourth quarter is historically the Debtor's best quarter. However, these results demonstrate a strong basis for continuing viability. During this period, Debtor has also stayed current on all of its post-petition liabilities, including lease payments, adequate protection payments, taxes, and vendor invoices.

Debtor intends to retain the bulk of its assets and to pay creditors as much as it reasonably can. No chapter 11 trustee has been appointed herein except for the statutory subchapter V trustee. No creditors committee has been appointed herein. Debtor is a debtor-in-possession.

## 2. Liquidation Analysis.

After deducting the amount of secured Claims in Debtor's property, the Debtor's net equity in its property has no value. As of the Effective Date, the Plan payments to be made on account of each Allowed General Unsecured Claim herein, after payment of Allowed Administrative and priority Claims, are not less than the amount that would be paid on such Claims if the Estate of the Debtor was liquidated on such date under Chapter 7 of this Title. A Liquidation Analysis is attached hereto as Exhibit C.

## 3. Vesting of Assets

Except as hereinafter specified in the Plan, Confirmation of the Plan shall not vest the assets of the Estate in the Debtor. All assets of the Debtor shall remain property of the Estate until the Discharge has been entered.

## 4. Executory Contracts and Leases

The Debtor assumes the following executory contracts and unexpired leases as of the Effective Date on the terms set forth below:

a. DEI Equipment, LLC – Debtor's predecessor in interest, Black Kettle Holdings, LLC, was party to a lease agreement dated December 3, 2020, with DEI Equipment, LLC ("Premises Lease") covering the location of the Debtor's operations at 550, 630, 635 and 645 N. Pennsylvania, Wichita, Kansas, 67214 (the "Property"). The Premises Lease has a current rental obligation of $15,606.00/mo. plus property taxes. The base rent escalates annually ($15,918.12 starting in March 2023, $16,236.48 starting in March 2024, and $16,236.48 starting in March 2025). Debtor has been the sole occupant of the Property at all relevant times and has paid all rents that have been paid. Debtor has paid all Premises Lease payments coming due from and after the Petition Date. Confirmation of the Plan will constitute an assignment of the Premises Lease to Debtor and will completely substitute the Debtor as the Tenant under the terms of the Premises Lease. Debtor shall assume all obligations of the Tenant under the Premises Lease. On the Petition Date, the Premises Lease was in arrears in the amount of $37,542.38 ("Arrearage"). Commencing in the month after the Effective Date, the Arrearage shall be divided by 24, and the resulting amount shall be added to the rent amount for the following 24 months of the Premises Lease. Other than changing the Tenant and providing for the cure of the Arrearage as set forth herein, the Premises Lease shall not be otherwise modified by the Plan. Confirmation of the Plan shall constitute a denial of the Motion for Stay Relief filed by DEI (Doc. Nos. 57 and 90) without prejudice.

b. Canon Financial Services, Inc. and/or Canon Solutions America, Inc. ("Canon") – Debtor leases certain copiers and equipment from Canon pursuant to a Unified Lease Agreement dated February 21, 2018, ULS# S0796685.03 ("Canon Lease"). The Canon Lease includes various maintenance and services to be supplied by Canon. Debtor is current on all payments required by the Canon Lease coming due following the Petition Date. Debtor assumes the Canon Lease as of the Effective Date. The Canon Lease was in arrears as of the Petition Date. The arrears under the Canon Lease shall be discharged herein by the entry of the Discharge. However, Canon shall have an allowed Class 5 Claim if it shall file such a Claim no later than the Effective Date, notwithstanding the expiration of the Claims Bar Date.

c. Unifirst – This is Debtor's lint-free rags supply company. Debtor is current on all post-petition payments. The contract with Unifirst will be assumed on the Effective Date. The arrears under the Unifirst contract shall be discharged herein by the entry of the Discharge. However, Unifirst shall have an allowed Class 5 Claim as set forth on Exhibit A.

d. Verizon Wireless – This is Debtor's mobile phone carrier. Debtor is current on all payments, pre- and post-petition. The contract with Verizon Wireless will be assumed

on the Effective Date without modifications. The amount listed in Claim No. 10 appears to be on account of electronic devices being paid through the Verizon monthly bill. Claim No. 10 will not be allowed as a Class 5 Claim, but will be allowed as part of the regular monthly installment agreement with Verizon.

e.  Flexible Benefits – This is Debtor's flex spending account provider (employee benefits). Debtor is current on all payments, pre- and post-petition. The contract with Flexible Benefits will be assumed on the Effective Date without modifications.

f.  Protec Security Services, Inc. ("Protec") – This is Debtor's premises security provider. Debtor is current on all post-petition payments. The contract with Protec will be assumed on the Effective Date. The arrears under the Protec contract shall be discharged herein by the entry of the Discharge. However, Protec shall have an allowed Class 5 Claim as set forth on Exhibit A.

g.  Quadient Postage Funding ("Quadient") – This is Debtor's postage supplier. Debtor is current on all post-petition payments. The contract with Quadient will be assumed on the Effective Date. The arrears under the Quadient contract shall be discharged herein by the entry of the Discharge. However, Quadient shall have an allowed Class 5 Claim as set forth on Exhibit A.

Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the Effective Date, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the Effective Date.

A proof of a Claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than the Effective Date.

### 5. Payments and Projected Disposable Income

(a) As of the Effective Date of the Plan, all of the Disposable Income of the Debtor to be received in the three (3) year Plan Period, beginning on the date that the first payment is due under the Plan, shall be applied to make the payments to Unsecured Claims Plan Period. The Budget set forth on Exhibit B shows that the Debtor will have sufficient net income to fund the payments required by the Plan. They are based on past performance, changes summarized above to the Debtor's operations, and reasonable expectations for the future. The projections are only that—they are not a guarantee of future performance. You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.

(b) All payments to be paid during the Plan shall be paid directly by the Debtor to the applicable creditor. If, in the aggregate, Cash payments otherwise provided for by the Plan with respect to an Allowed Claim would be less than $25.00, notwithstanding any contrary provision of the Plan, the Debtor shall not be required to make such payment and such funds shall be distributed to the holders of other Allowed Claims in accordance with the Plan. After 180 days, any unclaimed funds and/or uncleared checks shall be deemed forfeited and may be used by Debtor to make other payments as provided in the Plan.

(c) If the Plan is confirmed under 11 U.S.C. §1191(b), Section 5.b above shall not apply and instead Debtor shall submit to the supervision and control of the Trustee all or such portion of its future earnings or other future income as is necessary for the execution of the Plan until the third anniversary of the Effective Date. Thereafter, Section 5.b above shall be applicable as to any payments to Claimants. Payments shall be deemed made when they are delivered to the Trustee.

(d) The Debtor may cure any default in payment pursuant to its Plan by paying such payment within 30 days of the date originally due.

## 6. Effective Date of the Plan

The Effective Date of this Plan is the first business day following the date that is 14 days after the entry of the Confirmation Order. If, however, a stay of the Confirmation Order is in effect on that date, the Effective Date will be the first business day after the date on which the stay expires or is otherwise terminated.

## 7. Claims Filed in the Bankruptcy Court

The deadline for non-governmental units to file a proof of Claim was November 14, 2022, and is March 1, 2023, for governmental units ("Claims Bar Dates"). The list of creditors, including Claims filed, is attached hereto as Exhibit A. The amount of the Claims set forth in this Plan or on Exhibit A shall control over the amount listed in the Claim, unless the affected creditor objects to this Plan. Exhibit A shall be definitive and final as to the Allowed amount of the Claim unless specifically provided otherwise in the Plan or an objection to the Claim is filed prior to the Claim Objection Deadline. All filed Claims shall be deemed Allowed if no objection to the Claim is filed prior to the Claim Objection Deadline, unless a) the Claim is amended following the deadline for voting on this Plan, b) this Plan provides for the disallowance or alternate treatment of the Claim, c) the Claim is withdrawn, or d) the Court orders otherwise for good cause shown. Following Confirmation of the Plan, the Claimants shall not thereafter amend their Claims in a manner that would change the proposed payment so as to make the Plan unfeasible, except as specifically authorized herein.

### 8. Voting

Any party in interest may object to the Confirmation of the Plan if the party believes that the requirements for Confirmation are not met. Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a Claim or equity interest that is both (1) Allowed or allowed for voting purposes and (2) impaired. Among others, all Disputed Claims will not be entitled to vote on the Plan. Even if a creditor is not entitled to vote on the Plan, the right to object to the Confirmation of the Plan may still exist.

### 9. Modification of Plan

The Debtor may modify the Plan at any time before Confirmation of the Plan. However, the Court may require revoting on the Plan. The Plan may also be modified by the Court at the Plan Confirmation Hearing, without further notice to parties not appearing at the Plan Confirmation Hearing. Therefore, it is highly recommended that all parties in interest appear at the Plan Confirmation Hearing.

### 10. Effect of Confirmation

The Court shall retain jurisdiction over the assets of the Estate pending the completion of all requirements set forth herein, including but not limited to the sales, distribution of proceeds, and allowance of Claims of any nature. The Debtor may seek modification of the Plan after Confirmation pursuant to 11 U.S.C. § 1193 upon such notice as the Court shall direct. Confirmation shall bind the Debtor and each of its creditors as provided in 11 U.S.C. § 1141(a). Except as otherwise ordered by the Court or explicitly provided herein, the Confirmation of the Plan shall continue to act as a stay of any action against the Debtor or the Debtor's property as described in 11 U.S.C. §362(a).

### 11. Prepayment.

Debtor reserves the right to prepay all or any part of its debt described herein.

### 12. Discharge.

If the Debtor's Plan is confirmed under § 1191(a), on the Effective Date of the Plan, the Plan Confirmation Order itself shall constitute the "Discharge," and the Debtor will be discharged from any debt that arose before Confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

(i) imposed by this Plan; or

(ii) to the extent provided in § 1141(d)(6).

If the Debtor's Plan is confirmed under § 1191(b), Confirmation of this Plan does not discharge any debt provided for in this Plan until the Court grants a Discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt on which the last payment is due after the first 3 years of the Plan, or as otherwise provided in § 1192.

### 13. Liens Avoided.

The Debtor's assets subject to UCC-1 Liens are fully encumbered by the first priority Lien of Equity. Equity's Liens against Debtor's assets shall be limited to the value of the assets as set forth in Class 3. With that exception, all other security interests held by any creditor herein, actual, putative, real, or imagined, against the assets of the Estate shall be avoided by Confirmation of this Plan no other encumbrances against the Debtor's property shall survive Confirmation of the Plan. This avoidance shall be self-effecting upon entry of the Confirmation Order, without the necessity for any further action or additional Court order. For the avoidance of doubt, the Liens of record held by the following creditors shall be terminated, avoided, and cancelled by Confirmation of the Plan:

  a. Canon Financial Services, Inc.
  b. Fujifilm of North America Corporation
  c. Heidelberg USA, Inc.
  d. Key Equipment Finance
  e. TCF Equipment Finance
  f. U.S. Small Business Administration

Each such creditor, and any other party who does not have a Lien provided under this Plan, shall release its purported or recorded Liens and shall provide such documentation of the release as may be reasonable and necessary to clear the applicable encumbrance within 30 days of receiving a written request by the Debtor to do so. The foregoing notwithstanding, this avoidance shall not transfer ownership of any leased property from the lessor to the Debtor.

### 14. Liens Retained.

Except as otherwise set forth herein, specifically in Section A.13 and Class 3, Equity shall retain its Liens as they existed on the Petition Date, as modified in Class 3, until the obligations described hereunder are satisfied or until all of such secured creditor's collateral has been liquidated as provided by this Plan, at which time the Lien shall attach to the proceeds of such assets, or as otherwise allowed by order of the Court. Upon satisfaction of the treatment provided hereunder, Equity shall release its Liens and shall provide such documentation of the release as may be reasonable and necessary to clear the applicable encumbrance.

## 15. Corporate Governance

Following Confirmation, the Debtor's sole officer and director shall be Jay. Jay shall manage the Debtor's affairs as provided in the Debtor's existing Articles of Incorporation and Bylaws. Debtor shall not issue any nonvoting equity securities prior to completion of all obligations set forth in the Plan. Jay's salary shall remain at (or below) it's current level as reflected in the Budget during the Plan Period.

## 16. Severability

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

## 17. Binding effect

The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

## 18. Continuing Jurisdiction

The Bankruptcy Court shall retain jurisdiction of this Case pursuant to the provisions of the Bankruptcy Code until the proceedings are closed, more specifically with respect to the following matters:

- To classify, allow or disallow Claims and direct distributions of funds under the Plan and to adjudicate all controversies concerning classification or allowance of any Claim or interest.
- To enforce performance of the Plan or any provisions thereof.
- To hear and determine all Claims arising from the rejection of executory contracts, including leases, and to consummate the rejection and termination thereof.
- To liquidate damages or estimate Claims in connection with any disputed, contingent or unliquidated Claims.
- To adjudicate all Claims to an ownership interest in any property of the Debtor or of the Estate or any proceeds thereof.
- To adjudicate all Claims or controversies arising out of the purchases, sales or contracts made or undertaken by the Debtor during the pendency of the proceeding.
- To recover all assets and properties of the Debtor wherever located.
- To hear and determine matters concerning state, local and federal taxes pursuant to, inter alia §§ 346, 505, 525 and 1146 of the Bankruptcy Code.
- To hear and determine and pass upon any action or proceeding brought by the Debtor including, but not limited to, actions pursuant to §§ 542, 543, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code.
- To hear and determine all actions and proceedings brought by the Debtor, arising in or relating to the Debtor's reorganization Case or any issue arising under the Bankruptcy Code.

- To determine the validity, extent and priority of all Liens against property of the Debtor's Estate.
- To consider any modifications of the Plan pursuant to §1193 of the Bankruptcy Code and/or modification of the Plan after substantial consummation as defined in § 1101(2) of the Bankruptcy Code.
- To hear and determine all controversies, suits and disputes that may arise in connection with the interruption or enforcement of the Plan.
- To hear and determine such matters and make such orders as are consistent with the Plan and as may be necessary or desirable to carry out the provisions thereof.

If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction or is otherwise without jurisdiction over any matter arising out of this proceeding, including the matters set forth herein, or if the Debtor elects to bring an action in any other forum, this section shall have no effect upon and shall not control, prohibit or limit the exercise of any jurisdiction by any other court having jurisdiction with respect to such matter.

### 19. Captions

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

### 20. Controlling effect

Unless a rule of law or procedure is supplied by federal law (including the Code or the Bankruptcy Rules), the laws of the State of Kansas govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

### B. Plan Confirmation and Implementation

The Debtor anticipates that the United States Bankruptcy Court will hold a hearing on Confirmation of the Plan pursuant to 11 U.S.C. § 1128. The Debtor believes that this Plan complies with 11 U.S.C. §§ 1123, 1129, 1190, and 1191, each as applicable, and that it should be confirmed pursuant to 11 U.S.C. § 1191.

Particularly, the Debtor alleges that its Plan provides for payments on account of each Allowed General Unsecured Claim in an amount not less than that which would be paid on such Claim if the Estate were liquidated under Chapter 7 of Title 11 (See, Exhibit "A" Claims Analysis, Exhibit "B" Budget, and Exhibit "C" Liquidation Analysis), and that the Debtor will be able to make all the payments under their Plan and to comply with the Plan.

Debtor shall continue to act as a "Debtor in Possession" following entry of the Confirmation Order, and shall be vested with the right to pursue any Avoidance Actions, file objections to Claims, or take such other actions as shall be necessary or appropriate for the Estate.

In addition, the Debtor will be vested with all tax loss carry forwards and other tax attributes of Debtor, and all rights and powers of a Trustee under the Bankruptcy Code. Debtor shall file any Avoidance Actions not later than 120 days following the Effective Date. Debtor shall continue to pay its ordinary operating expenses as necessary and appropriate until such time as the final distribution is made, as provided herein. The Court's previous orders entered herein authorizing the employment of professionals for the Estate shall remain in effect post-Confirmation for all matters, including matters involving the Estate and the Debtor.

Following entry of the Confirmation Order, the Cash Collateral Order shall be of no further force or effect and shall be superseded in all regards by this Plan and the Confirmation Order. Debtor shall not be required to deliver to any creditor Cash Collateral in excess of the payments set forth herein, and Confirmation of this Plan shall authorize Debtor to use Cash Collateral and proceeds thereof in the ordinary course of its business and financial affairs for so long as it shall not be in an uncured default under this Plan. All creditors with Liens in proceeds Cash Collateral shall cooperate with the Debtor as may be reasonable or necessary for the Debtor to obtain possession and use of such proceeds. Nothing herein shall authorize the Debtor to liquidate or use the proceeds of collateral of any secured creditor, with the sole exception of inventory, receivables, funds on deposit, and other Cash Collateral in the ordinary course of Debtor's business, unless specifically set forth in this Plan (i.e. the Policy Liquidation set forth in Class 3).

Following entry of the Confirmation Order, Debtor shall continue to file its quarterly operating reports. The Debtor shall be authorized to execute and deliver all documents and to take or cause to be taken all action necessary or appropriate to execute and implement the provisions of the Plan. No entity may commence or continue any action or proceeding, or perform any act, to interfere with the implementation and consummation of the Plan and the payments to be made hereunder.

Upon entry of the Discharge, all property of the Debtor retained under the Plan will vest in the Debtor. Debtor shall move promptly to obtain a Final Decree following entry of the Discharge, substantial consummation of the Plan, and completion of the administration of the Case.

### C. Classification of Claims.

Class 1 -    **Administrative Claims**

Class 2 -    **Priority Tax Claims**

Class 3 -    **Undersecured Secured Claim of Equity Bank (Claim 5)**

Class 4 -    **Undersecured Claim of U.S. Small Business Administration (Claim 9)**

Class 5 -    **General Unsecured Claims**

Class 6 -    **Equity Interests of the Debtor's Shareholder**

### D.  Specific Treatment of Claims.

#### Class 1 -   Administrative Claims.

Class 1 claims consist of those Administrative Claims that are allowed by the Court pursuant to 11 U.S.C. § 503. Debtor anticipates such claims to consist of unpaid fees to professionals and the Trustee. Class 1 claims shall be paid directly by the Debtor.  All Administrative Claims shall be filed not later than the closing of this Case.  Administrative Claims shall be paid prior to making payments to any other class of Claims under the Plan.  Administrative Claims shall be paid as and when approved by the Court unless the applicable creditor agrees to different treatment.  In addition, the uncontested claim of Kylie Rott for pre-petition independent contractor wages in the amount of $595.00 and the portion of Claim No. 4 filed by Uline for a reclamation Claim in the amount of $823.20 shall both be treated as administrative priority claims for convenience purposes.  Both shall be paid in full within 30 days of the Effective Date.  Class 1 is unimpaired and not entitled to vote on the Plan.

#### Class 2 -   Priority Tax Claims

Class 2 consists of priority tax Claims, presently represented by Claim No. 3 filed by the Internal Revenue Service ("IRS") in the total amount of $500.00 and Claim Nos. 14 and 15 filed by the Kansas Department of Revenue ("KDOR") in the total amount of $38,140.38, all of which was filed as unsecured.  Debtor believes that the IRS has understated its Claim, that the KDOR erroneously failed to denote its Claims as "priority," and that the Allowed amounts of the Class 2 Claims will be $36,465.42 for the IRS and $35,891.73 for the KDOR.  The remaining balance of the Claims filed by the IRS and the KDOR shall be Allowed as General Unsecured Claims in Class 5.  The Allowed amount of the Class 3 Claims shall be determined following the expiration of the governmental Claims Bar Date.  The Allowed amount of the Class 3 Claims shall be paid in full in 3 equal annual installments not later than January 31 of each year following the Effective Date. Class 2 is impaired but its treatment is determined by the Code and the Class 2 Claimants are not entitled to vote on the Plan.

#### Class 3 -   Undersecured Secured Claim of Equity Bank (Claim 5)

Class 3 consists of the undersecured Claim of the Equity Bank ("Equity"), filed as Claim No. 5 in the Case herein in the amount of $2,788.674.58.  The Class 3 Claim is secured by, in summary and without limitation, Debtor's receivables, contract rights, inventory, equipment, and proceeds therefrom.  Equity shall retain a first priority security interest in and to all assets in which it held a valid and perfected security interest as of the Petition Date, together with all proceeds thereof, but not accessions thereto or replacements thereof.  For the elimination of doubt, all of Debtor's post-petition receivables and funds held on deposit shall continue to be subject to a first priority security interest held by Equity.  The security interest retained by Equity shall only secure the Allowed amount of the Class 3 Claim.  Not later than thirty (30) days following the Effective

Date, Debtor shall fully liquidate the life insurance policy owned by the Debtor and issued by Northwestern Mutual, Policy No. 19284874, insuring the life of Jay Ewy, with an estimated cash value of $200,000.00. The total proceeds from the Policy shall be delivered to Equity ("Policy Liquidation"). Thereafter, the Class 3 Claim shall be Allowed in the amount of $1,795,939.00, constituting the value of Debtor's remaining assets pledged to Equity as of the Petition Date. The Class 3 Claim shall be reduced by the total amount of adequate protection payments paid to Equity from and after the Petition Date, as set forth in the Cash Collateral Order, which payments shall continue through and including the month of the Effective Date. Debtor estimates that the Class 3 Claim shall be $1,705,939.00 within 30 days of the Effective Date. No fees, costs, or expenses shall be added to the Class 3 Claim.

The Class 3 Claim shall be fully amortized over a ten (10) year period and paid monthly with interest accruing at 7.0% per annum from and after the Effective Date, compounded annually and calculated on a 365-day basis (365/365). Payments shall be not less than $15,000.00 per month, due on the last day of the month with the first payment coming due in the month following Effective Date. If, at the end of each calendar year, such cumulative payments are less than the fully amortized payments, Debtor shall pay the entirety of such shortfall not later than January 31 of the following year, inclusive of all interest having accrued as a result of the lower amount of such minimum payments, if any. The Equity Claim shall be limited to $2,617,655.45 for the reasons set forth in the objection to the Claim filed contemporaneously herewith. Equity shall have an Allowed Class 5 General Unsecured Claim equal to $2,617,655.45, less the $1,795,939.00 as the Allowed Class 3 Claim, less the total proceeds received by Equity from the Policy Liquidation.

In the event that Equity elects treatment under 11 U.S.C. §1111(b), the Debtor shall pay the allowed amount of the Equity Claim in full, $2,617,655.45. The adequate protection payments and the Policy Liquidation proceeds shall be applied to the Equity Claim first. The remaining balance shall be paid over ten (10) years without interest. The payment shall be made in equal installments annually on the anniversary of the Effective Date. In the event that Equity receives payment from any non-debtor party or from the liquidation of assets belonging to such party, such proceeds shall be applied to the then remaining balance of the Equity Claim and the remaining payments shall be the quotient of the remaining balance divided by the remaining number of payments. Equity shall not hold a Class 5 Claim.

Debtor shall produce to Equity copies of its annual tax returns within two weeks of their being filed each year until the Class 3 Claim is paid in full. Debtor shall produce to Equity copies of its annual financial statements within two weeks of their being prepared each year until the Class 3 Claim is paid in full. Debtor shall continue to maintain adequate insurance coverage for the Equity's collateral and the Debtor's operations and shall provide proof of the same upon request. Equity shall be listed as a loss payee or additional insured on such policies. Equity will be permitted to inspect its collateral twice a year upon not less than seven days' notice to the Debtor and its counsel. The existing deposit account control agreements regarding Debtor's bank

accounts not located at Equity shall remain in place. Regardless of the terms of those agreements, Equity shall not attempt to exercise control over those accounts unless Debtor shall have an uncured payment default as set forth in this Plan. Nothing herein shall constitute an impairment of Equity's claims against any non-debtor borrower, guarantor, surety, or pledgor, except that payments provided herein on the Class 3 Claim (or the Class 5 Claim if applicable) shall be credited to Equity's claims against such parties in the same manner as would otherwise be required by the underlying loan documents. Class 3 is impaired but not entitled to vote on the Plan as its Claim is Disputed.

### Class 4 - Undersecured Claim of U.S. Small Business Administration (Claim 9)

Class 4 consists of the undersecured Claim of U.S. Small Business Administration ("SBA"), filed as Claim No. 9. The Class 4 Claim is secured by junior priority Liens in and to the same assets pledged to Equity. The Class 4 Claim is wholly undersecured and there is no value or equity remaining in any of the encumbered assets to secure the Class 4 Claim. The Class 4 Claim is not eligible for treatment under 11 U.S.C. § 1111(b). Confirmation of the Plan shall supersede the terms set forth in the Cash Collateral Order concerning the reservation of rights to determine Lien status and priority as to the Debtor's assets and shall terminate and avoid the Liens of the SBA as to those assets as the value of the assets is less than the amount of the Class 4 Claim. The entirety of the Class 4 Claim shall be allowed as a Class 5 General Unsecured Claim. Class 4 is impaired and entitled to vote on the Plan. The SBA shall be entitled to vote in both Class 4 and Class 5.

### Class 5 - General Unsecured Claims

Class 5 consists of the General Unsecured Claims as of the filing date, including the non-priority portions of the Class 2 Claims and the undersecured portions of the Class 3 and Class 4 Claims. The allowed Class 5 Claims shall be paid the Debtor's Disposable Income for the preceding calendar year for three calendar years, commencing with the first payment date coming due after the Effective Date. Payment shall be made not later than January 31, 2024, January 31, 2025, and January 31, 2026. Distributions to the Class 5 Claims shall be made on a Pro Rata basis. All Allowed Class 5 Claims are impaired and entitled to vote on the Plan.

### Class 6 - Equity Interests of the Debtor's Shareholder

Class 6 Equity Ownership Interests consist of the shares of Debtor's stock held by its sole shareholder, Jay Ewy. Mr. Ewy shall retain his stock in the Debtor. Class 6 is unimpaired and not entitled to vote on the Plan.

PRELLE ERON & BAILEY, P.A.
Attorneys for Debtor

*/s/ David Prelle Eron*
DAVID PRELLE ERON, #23429
301 N. Main Street, Suite 2000
Wichita, KS  67202
316-262-5500 / 316-262-5559 (fax)
david@eronlaw.net

| Creditor | Claim # | Scheduled | Claim | Disputed | Secured | Priority | Unsecured | Collateral / Basis | Treatment |
|---|---|---|---|---|---|---|---|---|---|
| American Express | | $ 13,049.77 | $ - | | $ - | $ - | $ 13,049.77 | Credit Card | Allow as unsecured. |
| Boettcher America Corp | | $ 3,546.89 | $ - | | $ - | $ - | $ 3,546.89 | Business Goods or Services | Allow as unsecured. |
| Canon Financial Services Inc. | | $ 138,921.81 | $ - | | $ - | $ - | 138,921.81 | Printers / Business Goods or Services / Agreement | Allow as unsecured, but ONLY if claim filed prior to Effective Date. |
| Capital One | | $ 39,633.02 | $ - | | $ - | $ - | $ 39,633.02 | Credit Card | Allow as unsecured. |
| Capital One | | $ 9,228.73 | $ - | | $ - | $ - | $ 9,228.73 | Credit Card | Allow as unsecured. |
| Cellco Partnership d/b/a Verizon Wireless | 10 | $ - | $ 2,571.15 | | $ - | $ - | $ - | Cell Phones, etc. | Disallow except as included in contract assumption detailed in Plan. |
| Central Equipment | | $ 326.78 | $ - | | $ - | $ - | $ 326.78 | Business Goods or Services | Allow as unsecured. |
| CK Contracting | | $ 3,024.68 | $ - | | $ - | $ - | $ 3,024.68 | Business Goods or Services | Allow as unsecured. |
| Commercial Trade Services | | $ 126.36 | $ - | | $ - | $ - | $ 126.36 | Business Goods or Services | Allow as unsecured. |
| Culligan of Wichita | | $ 124.00 | $ - | | $ - | $ - | $ 124.00 | Business Goods or Services | Allow as unsecured. |
| Davis  Pierce Die Service Inc | | $ 587.00 | $ - | | $ - | $ - | $ 587.00 | Business Goods or Services | Allow as unsecured. |
| Direct Logistics Inc | | $ 745.00 | | | $ - | $ - | $ 745.00 | Business Goods or Services | Allow as unsecured. |
| Discount Labels | | $ 951.47 | $ - | | $ - | $ - | $ 951.47 | Business Goods or Services | Allow as unsecured. |
| Dugan Truck Line LLC | | $ 140.31 | $ - | | $ - | $ - | $ 140.31 | Business Goods or Services | Allow as unsecured. |
| Electronics for Imaging Inc | | $ 10,748.73 | $ - | | | | $ 10,748.73 | Business Goods or Services | Allow as unsecured. |
| Equity Bank | 5 | $ 2,800,000.00 | $ 2,788,674.58 | yes | $ 1,995,939.00 | $ - | 621,716.45 | All Assets / UCC Financing Statement, Money Loaned | Pay Policy Liquidation in lump sum.  Pay $1,795,939, less adeq. prot. over 10 years.  Balance unsec. See Class 3. |
| Firespring | | unknown | $ - | | $ - | $ - | $ - | | Disallow.  No claim filed. |
| FMI Forms Manufacturers | | $ 79.38 | $ - | | $ - | $ - | $ 79.38 | Business Goods or Services | Allow as unsecured. |
| Fujifilm North America Corporation | 11 | $ 17,099.96 | $ 22,095.97 | | $ - | $ - | $ 22,095.97 | Business Goods or Services | Allow as unsecured. |
| Gallagher Benefit Services Inc | | $ 4,233.34 | $ - | | $ - | $ - | $ 4,233.34 | Business Goods or Services | Allow as unsecured. |
| Heidelberg USA, Inc. | 6 | $ 8,848.73 | $ 8,848.73 | yes | $ - | $ - | $ 8,848.73 | Business Goods or Services | Allow as unsecured. |
| Hewitt & Behr | | $ 655.00 | $ - | | $ - | $ - | $ 655.00 | Business Goods or Services | Allow as unsecured. |
| IMS | 2 | $ 18,647.26 | $ 18,087.31 | | $ - | $ - | $ 18,087.31 | Goods Sold/Servicess Provided | Allow as unsecured. |
| Internal Revenue Service | 3 | $ 14,000.00 | $ 500.00 | | $ - | $ 36,465.42 | $ 2,161.23 | Withholding Taxes | Allow as unsecured. |
| JPMorgan Chase Bank, N.A. s/b/m/t Chase Bank USA, N.A. | 7 | $ 68,835.64 | $ 76,383.85 | | $ - | $ - | $ 76,383.85 | Credit Card | Allow as unsecured. |
| Kansas Department of Labor | | unknown | $ - | | $ - | $ - | $ - | Taxes | Disallow unless claim filed. |
| Kansas Department of Revenue | 14 | $ 18,688.65 | $ 33,935.97 | | $ - | $ 31,687.32 | $ 2,248.65 | Sales Taxes | Allow as unsecured. |
| Kansas Department of Revenue | 15 | $ - | $ 4,204.41 | | $ - | $ 4,204.41 | $ - | Withholding Taxes | Allow as unsecured. |
| Key Equipment Finance | | unknown | $ - | yes | $ - | $ - | $ - | Business Goods or Services | Disallow.  No claim filed. |
| Kylie Rott | | $ 595.00 | $ - | | $ - | $ 595.00 | $ - | Business Goods or Services | Allow as wage claim. See Class 1. |
| Litho Supply Co | | $ 873.93 | $ - | | $ - | $ - | $ 873.93 | Business Goods or Services | Allow as unsecured. |
| Marcus | | $ 15,543.81 | $ - | | $ - | $ - | $ 15,543.81 | Credit Card | Allow as unsecured. |
| Metro Courier | | $ 60.19 | $ - | | $ - | $ - | $ 60.19 | Business Goods or Services | Allow as unsecured. |
| Midland Paper | | $ 83,313.22 | $ - | | $ - | $ - | $ 83,313.22 | Business Goods or Services | Allow as unsecured. |
| Midwest Single Source Inc | | $ 456.88 | $ - | | $ - | $ - | $ 456.88 | Business Goods or Services | Allow as unsecured. |
| Navitor | | $ 99.00 | $ - | | $ - | $ - | $ 99.00 | Business Goods or Services | Allow as unsecured. |
| Prairie Fire Coffee | | $ 456.35 | $ - | | $ - | $ - | $ 456.35 | Business Goods or Services | Allow as unsecured. |
| Printegra | | $ 2,894.12 | $ - | | $ - | $ - | $ 2,894.12 | Business Goods or Services | Allow as unsecured. |
| Professional Office Systems | | $ 114.49 | $ - | | $ - | $ - | $ 114.49 | Business Goods or Services | Allow as unsecured. |
| Protec Security Services Inc | | $ 365.00 | $ - | | $ - | $ - | $ 365.00 | Business Goods or Services | Allow as unsecured. |
| Quadient Postage Funding | | $ 4,410.12 | $ - | | $ - | $ - | $ 4,410.12 | Business Goods or Services | Allow as unsecured. |
| Quiktrip Corp | | $ 900.00 | $ - | | $ - | $ - | $ 900.00 | Business Goods or Services | Allow as unsecured. |
| Raceway Electric | | $ 307.24 | $ - | | $ - | $ - | $ 307.24 | Business Goods or Services | Allow as unsecured. |
| River City Mechanical | | $ 402.80 | $ - | | $ - | $ - | $ 402.80 | Business Goods or Services | Allow as unsecured. |
| Safety-Kleen Systems Inc | | $ 1,129.81 | $ - | | $ - | $ - | $ 1,129.81 | Business Goods or Services | Allow as unsecured. |
| St Louis Tag Co | | $ 3,000.65 | $ - | | $ - | $ - | $ 3,000.65 | Business Goods or Services | Allow as unsecured. |
| Superior Office | | unknown | $ - | | $ - | $ - | $ - | Business Goods or Services | Disallow.  No claim filed. |
| Superior Rubber Stamp | | $ 48.50 | $ - | | $ - | $ - | $ 48.50 | Business Goods or Services | Allow as unsecured. |
| Superior Signs and Engraving Inc | | $ 7,850.03 | $ - | | $ - | $ - | $ 7,850.03 | Business Goods or Services | Allow as unsecured. |
| Survey Advantage | | unknown | $ - | | $ - | $ - | $ - | Business Goods or Services | Disallow.  No claim filed. |
| TCF Equipment Finance | | $ 807.21 | $ - | yes | $ - | $ - | $ - | Business Goods or Services | Disallow.  No claim filed. |
| TForce Freight | | $ 201.78 | $ - | | $ - | $ - | $ 201.78 | Business Goods or Services | Allow as unsecured. |
| Uline | 4 | $ 2,550.20 | $ 2,550.20 | | $ - | $ 823.20 | $ 1,727.00 | Goods Sold | Allow as reclamation and unsecured in the amounts shown. See Class 1. |
| Unifirst | | $ 1,263.26 | $ - | | $ - | $ - | $ 1,263.26 | Business Goods or Services | Allow as unsecured. |
| Update | | $ 174.00 | $ - | | $ - | $ - | $ 174.00 | Business Goods or Services | Allow as unsecured. |
| UPS | | unknown | $ - | | $ - | $ - | $ - | Business Goods or Services | Disallow.  No claim filed. |
| US Small Business Administration | 9 | $ 500,000.00 | $ 524,359.58 | yes | $ - | $ - | 524,359.58 | All Assets / Junior Lien | Allow as unsecured. |
| Veritiv Operating Company | 13 | $ 1,618.28 | $ 1,582.66 | | $ - | $ - | $ 1,582.66 | Goods Sold | Allow as unsecured. |
| Western States Envelope Company | 12 | $ 10,978.40 | $ 12,915.26 | | $ - | $ - | $ 12,915.26 | Goods Sold | Allow as unsecured. |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Wichita Alarm Program | | $ 5,000.00 | $ - | yes | $ - | $ - | $ - | Business Goods or Services | Disallow.  No claim filed. |
| Wichita Bindery | | $ 300.00 | $ - | | $ - | $ - | $ 300.00 | Business Goods or Services | Allow as unsecured. |
| WW Mails | | unknown | $ - | | $ - | $ - | $ - | Business Goods or Services | Disallow.  No claim filed. |
| Xerox Corportion | 8 | $ 73,960.77 | $ 73,714.67 | yes | $ - | $ - | 73,714.67 | Executory Combined Lease Contracts | Allow as unsecured. |
| X-Press Signs and Graphics | 1 | $ 1,718.94 | $ 2,078.48 | | $ - | $ - | 2,078.48 | Goods Sold | Allow as unsecured. |
| **TOTAL** | | | | | **$ 1,995,939.00** | **$ 73,775.35** | **$ 1,718,207.29** | | |

| Income | Total | January | February | March | April | May | June | July | August | September | October | November | December |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Regular Sales | $ 3,140,000.00 | 230,000.00 | 220,000.00 | 210,000.00 | 230,000.00 | 240,000.00 | 250,000.00 | 270,000.00 | 280,000.00 | 280,000.00 | 280,000.00 | 300,000.00 | 350,000.00 |
| Sales Tax Collected | $ 85,660.00 | 5,750.00 | 5,500.00 | 5,500.00 | 6,960.00 | 7,100.00 | 7,300.00 | 7,600.00 | 7,650.00 | 7,650.00 | 7,650.00 | 8,000.00 | 9,000.00 |
| Freight and Delivery Sales | $ 28,150.00 | 2,200.00 | 2,100.00 | 2,000.00 | 2,100.00 | 2,200.00 | 2,300.00 | 2,450.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,600.00 | 2,700.00 |
| **Total Income** | $ 3,253,810.00 | $ 237,950.00 | $ 227,600.00 | $ 217,500.00 | $ 239,060.00 | $ 249,300.00 | $ 259,600.00 | $ 280,050.00 | $ 290,150.00 | $ 290,150.00 | $ 290,150.00 | $ 310,600.00 | $ 361,700.00 |

| Expenses | Total | January | February | March | April | May | June | July | August | September | October | November | December |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| COGS | $ 706,500.00 | 65,250.00 | 65,250.00 | 50,000.00 | 55,000.00 | 55,000.00 | 57,000.00 | 58,000.00 | 59,000.00 | 59,000.00 | 59,000.00 | 59,000.00 | 65,000.00 |
| Sales Tax | $ 85,660.00 | 5,750.00 | 5,500.00 | 5,500.00 | 6,960.00 | 7,100.00 | 7,300.00 | 7,600.00 | 7,650.00 | 7,650.00 | 7,650.00 | 8,000.00 | 9,000.00 |
| Management Compensation | $ 134,562.38 | 10,350.95 | 10,350.95 | 10,350.95 | 10,350.95 | 15,526.44 | 10,350.95 | 10,350.95 | 10,350.95 | 10,350.95 | 10,350.95 | 15,526.44 | 10,350.95 |
| Labor/Wages | $ 1,244,047.15 | 94,649.05 | 94,649.05 | 94,649.05 | 94,700.00 | 142,000.00 | 94,700.00 | 94,700.00 | 94,700.00 | 94,700.00 | 147,000.00 | 98,800.00 | 98,800.00 |
| Advertising | $ 3,300.00 | 400.00 | 400.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| Auto & Truck | $ 6,000.00 | 750.00 | 750.00 | 450.00 | 450.00 | 450.00 | 450.00 | 450.00 | 450.00 | 450.00 | 450.00 | 450.00 | 450.00 |
| Insurance: | $ - | | | | | | | | | | | | |
| Life | $ 1,679.48 | 839.74 | 839.74 | - | - | - | - | - | - | - | - | - | - |
| Equipment, Liability, Etc. | $ 64,315.20 | 5,359.60 | 5,359.60 | 5,359.60 | 5,359.60 | 5,359.60 | 5,359.60 | 5,359.60 | 5,359.60 | 5,359.60 | 5,359.60 | 5,359.60 | 5,359.60 |
| Property Taxes | $ 34,629.20 | 2,814.60 | 2,814.60 | 2,900.00 | 2,900.00 | 2,900.00 | 2,900.00 | 2,900.00 | 2,900.00 | 2,900.00 | 2,900.00 | 2,900.00 | 2,900.00 |
| Bank Fees | $ 30,000.00 | 3,000.00 | 3,000.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 |
| IT | $ 13,000.00 | 1,500.00 | 1,500.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| Misc | $ 23,000.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 6,500.00 |
| Office Supplies/Postage | $ 2,400.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 |
| Janitorial | $ 2,300.00 | 400.00 | 400.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 |
| Business Utilities | $ - | | | | | | | | | | | | |
| Gas | $ 19,000.00 | 2,600.00 | 3,000.00 | 2,500.00 | 2,500.00 | 700.00 | 500.00 | 500.00 | 500.00 | 500.00 | 700.00 | 2,500.00 | 2,500.00 |
| Electric | $ 56,000.00 | 4,000.00 | 4,000.00 | 3,000.00 | 3,000.00 | 4,500.00 | 5,000.00 | 6,000.00 | 7,000.00 | 6,000.00 | 4,500.00 | 4,500.00 | 4,500.00 |
| Internet/Phone | $ 20,400.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 |
| Water | $ 3,700.00 | 350.00 | 350.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 |
| Repairs/Maintenance | $ 11,000.00 | 500.00 | 500.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| Rent | $ 201,343.06 | 15,606.00 | 15,606.00 | 15,918.12 | 15,918.12 | 15,918.12 | 15,918.12 | 17,482.39 | 17,482.39 | 17,482.39 | 17,482.39 | 17,482.39 | 17,482.39 |
| Equipment Leases | $ 178,544.40 | 14,878.70 | 14,878.70 | 14,878.70 | 14,878.70 | 14,878.70 | 14,878.70 | 14,878.70 | 14,878.70 | 14,878.70 | 14,878.70 | 14,878.70 | 14,878.70 |
| Sub V Trustee Fees | $ 5,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | | | | | | | |
| Attorney Fees | $ 54,000.00 | 10,000.00 | 10,000.00 | 7,500.00 | 7,500.00 | 7,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 1,000.00 | 1,000.00 | 1,000.00 | |
| Accountant Fees | $ 12,500.00 | 7,000.00 | 1,500.00 | 1,500.00 | - | - | - | - | 2,500.00 | - | - | - | - |
| Appraiser/Expert Fees | $ 5,000.00 | - | - | - | 2,500.00 | 2,500.00 | - | - | - | - | - | - | - |
| Capital Improvement Est. | $ 14,000.00 | - | - | - | - | - | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 |
| Priority Tax Claims | $ - | - | - | - | - | - | - | - | - | - | - | - | - |
| Equity Payment | $ 188,651.80 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 19,807.40 | 19,807.40 | 19,807.40 | 19,807.40 | 19,807.40 | 19,807.40 | 19,807.40 |
| **Total Expenses** | $ 3,120,532.67 | $ 260,398.64 | $ 255,048.64 | $ 234,006.42 | $ 241,517.37 | $ 293,832.86 | $ 248,729.04 | $ 251,029.04 | $ 255,579.04 | $ 250,579.04 | $ 301,579.04 | $ 260,704.53 | $ 267,529.04 |
| **NET INCOME** | $ 133,277.33 | $ (22,448.64) | $ (27,448.64) | $ (16,506.42) | $ (2,457.37) | $ (44,532.86) | $ 10,870.96 | $ 29,020.96 | $ 34,570.96 | $ 39,570.96 | $ (11,429.04) | $ 49,895.47 | $ 94,170.96 |

**Docuplex, Inc**  **Case No. 22-10734-11**  **Budget - 2024**  **Exhibit B**

| Income | Total | January | February | March | April | May | June | July | August | September | October | November | December |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Regular Sales | $ 3,140,000.00 | 230,000.00 | 220,000.00 | 210,000.00 | 230,000.00 | 240,000.00 | 250,000.00 | 270,000.00 | 280,000.00 | 280,000.00 | 280,000.00 | 300,000.00 | 350,000.00 |
| Sales Tax Collected | $ 85,660.00 | 5,750.00 | 5,500.00 | 5,500.00 | 6,960.00 | 7,100.00 | 7,300.00 | 7,600.00 | 7,650.00 | 7,650.00 | 7,650.00 | 8,000.00 | 9,000.00 |
| Freight and Delivery Sales | $ 28,150.00 | 2,200.00 | 2,100.00 | 2,000.00 | 2,100.00 | 2,200.00 | 2,300.00 | 2,450.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,600.00 | 2,700.00 |
| **Total Income** | $ 3,253,810.00 | $ 237,950.00 | $ 227,600.00 | $ 217,500.00 | $ 239,060.00 | $ 249,300.00 | $ 259,600.00 | $ 280,050.00 | $ 290,150.00 | $ 290,150.00 | $ 290,150.00 | $ 310,600.00 | $ 361,700.00 |

| Expenses | Total | January | February | March | April | May | June | July | August | September | October | November | December |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| COGS | $ 671,000.00 | 50,000.00 | 45,000.00 | 50,000.00 | 55,000.00 | 55,000.00 | 57,000.00 | 58,000.00 | 59,000.00 | 59,000.00 | 59,000.00 | 59,000.00 | 65,000.00 |
| Sales Tax | $ 85,660.00 | 5,750.00 | 5,500.00 | 5,500.00 | 6,960.00 | 7,100.00 | 7,300.00 | 7,600.00 | 7,650.00 | 7,650.00 | 7,650.00 | 8,000.00 | 9,000.00 |
| Management Compensation | $ 134,562.38 | 10,350.95 | 10,350.95 | 10,350.95 | 10,350.95 | 15,526.44 | 10,350.95 | 10,350.95 | 10,350.95 | 10,350.95 | 15,526.44 | 10,350.95 | 10,350.95 |
| Labor/Wages | $ 1,244,200.00 | 94,700.00 | 94,700.00 | 94,700.00 | 94,700.00 | 142,000.00 | 94,700.00 | 94,700.00 | 94,700.00 | 94,700.00 | 147,000.00 | 98,800.00 | 98,800.00 |
| Advertising | $ 3,300.00 | 400.00 | 400.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| Auto & Truck | $ 6,000.00 | 750.00 | 750.00 | 450.00 | 450.00 | 450.00 | 450.00 | 450.00 | 450.00 | 450.00 | 450.00 | 450.00 | 450.00 |
| Insurance: | $ - | | | | | | | | | | | | |
| Equipment, Liability, Etc. | $ 64,315.20 | 5,359.60 | 5,359.60 | 5,359.60 | 5,359.60 | 5,359.60 | 5,359.60 | 5,359.60 | 5,359.60 | 5,359.60 | 5,359.60 | 5,359.60 | 5,359.60 |
| Property Taxes | $ 35,400.00 | 2,950.00 | 2,950.00 | 2,950.00 | 2,950.00 | 2,950.00 | 2,950.00 | 2,950.00 | 2,950.00 | 2,950.00 | 2,950.00 | 2,950.00 | 2,950.00 |
| Bank Fees | $ 28,800.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 |
| IT | $ 13,000.00 | 1,500.00 | 1,500.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| Misc | $ 23,000.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 6,500.00 |
| Office Supplies/Postage | $ 2,400.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 |
| Janitorial | $ 1,800.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 |
| Business Utilities | $ - | | | | | | | | | | | | |
| Gas | $ 19,000.00 | 2,600.00 | 3,000.00 | 2,500.00 | 2,500.00 | 700.00 | 500.00 | 500.00 | 500.00 | 500.00 | 700.00 | 2,500.00 | 2,500.00 |
| Electric | $ 56,000.00 | 4,000.00 | 4,000.00 | 3,000.00 | 3,000.00 | 4,500.00 | 5,000.00 | 6,000.00 | 7,000.00 | 6,000.00 | 4,500.00 | 4,500.00 | 4,500.00 |
| Internet/Phone | $ 20,400.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 |
| Water | $ 3,700.00 | 350.00 | 350.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 |
| Repairs/Maintenance | $ 12,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| Rent | $ 212,972.23 | 17,482.39 | 17,482.39 | 17,800.75 | 17,800.75 | 17,800.75 | 17,800.75 | 17,800.75 | 17,800.75 | 17,800.75 | 17,800.75 | 17,800.75 | 17,800.75 |
| Equipment Leases | $ 178,544.40 | 14,878.70 | 14,878.70 | 14,878.70 | 14,878.70 | 14,878.70 | 14,878.70 | 14,878.70 | 14,878.70 | 14,878.70 | 14,878.70 | 14,878.70 | 14,878.70 |
| Attorney Fees | $ 3,000.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| Accountant Fees | $ 7,000.00 | - | 1,500.00 | 1,500.00 | 1,500.00 | - | - | - | 2,500.00 | - | - | - | - |
| Capital Improvement Est. | $ 24,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 |
| Priority Tax Claims | $ 24,119.05 | 24,119.05 | - | - | - | - | - | - | - | - | - | - | - |
| Equity Payment | $ 237,688.80 | 19,807.40 | 19,807.40 | 19,807.40 | 19,807.40 | 19,807.40 | 19,807.40 | 19,807.40 | 19,807.40 | 19,807.40 | 19,807.40 | 19,807.40 | 19,807.40 |
| **Total Expenses** | $ 3,111,862.06 | $ 264,198.09 | $ 236,729.04 | $ 239,547.40 | $ 246,007.40 | $ 296,822.89 | $ 246,847.40 | $ 249,147.40 | $ 253,697.40 | $ 250,197.40 | $ 306,372.89 | $ 255,147.40 | $ 267,147.40 |
| **NET INCOME** | $ 141,947.94 | $ (26,248.09) | $ (9,129.04) | $ (22,047.40) | $ (6,947.40) | $ (47,522.89) | $ 12,752.60 | $ 30,902.60 | $ 36,452.60 | $ 39,952.60 | $ (16,222.89) | $ 55,452.60 | $ 94,552.60 |

**Docuplex, Inc**  Case No. 22-10734-11  Budget - 2025  Exhibit B

| Income | Total | January | February | March | April | May | June | July | August | September | October | November | December |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Regular Sales | $ 3,140,000.00 | 230,000.00 | 220,000.00 | 210,000.00 | 230,000.00 | 240,000.00 | 250,000.00 | 270,000.00 | 280,000.00 | 280,000.00 | 280,000.00 | 300,000.00 | 350,000.00 |
| Sales Tax Collected | $ 85,660.00 | 5,750.00 | 5,500.00 | 5,500.00 | 6,960.00 | 7,100.00 | 7,300.00 | 7,600.00 | 7,650.00 | 7,650.00 | 7,650.00 | 8,000.00 | 9,000.00 |
| Freight and Delivery Sales | $ 28,150.00 | 2,200.00 | 2,100.00 | 2,000.00 | 2,100.00 | 2,200.00 | 2,300.00 | 2,450.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,600.00 | 2,700.00 |
| **Total Income** | $ 3,253,810.00 | $ 237,950.00 | $ 227,600.00 | $ 217,500.00 | $ 239,060.00 | $ 249,300.00 | $ 259,600.00 | $ 280,050.00 | $ 290,150.00 | $ 290,150.00 | $ 290,150.00 | $ 310,600.00 | $ 361,700.00 |

| Expenses | Total | January | February | March | April | May | June | July | August | September | October | November | December |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| COGS | $ 676,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 55,000.00 | 55,000.00 | 57,000.00 | 58,000.00 | 59,000.00 | 59,000.00 | 59,000.00 | 59,000.00 | 65,000.00 |
| Sales Tax | $ 85,660.00 | 5,750.00 | 5,500.00 | 5,500.00 | 6,960.00 | 7,100.00 | 7,300.00 | 7,600.00 | 7,650.00 | 7,650.00 | 7,650.00 | 8,000.00 | 9,000.00 |
| Management Compensation | $ 134,562.38 | 10,350.95 | 10,350.95 | 10,350.95 | 10,350.95 | 15,526.44 | 10,350.95 | 10,350.95 | 10,350.95 | 10,350.95 | 15,526.44 | 10,350.95 | 10,350.95 |
| Labor/Wages | $ 1,244,200.00 | 94,700.00 | 94,700.00 | 94,700.00 | 94,700.00 | 142,000.00 | 94,700.00 | 94,700.00 | 94,700.00 | 94,700.00 | 147,000.00 | 98,800.00 | 98,800.00 |
| Advertising | $ 3,300.00 | 400.00 | 400.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| Auto & Truck | $ 6,000.00 | 750.00 | 750.00 | 450.00 | 450.00 | 450.00 | 450.00 | 450.00 | 450.00 | 450.00 | 450.00 | 450.00 | 450.00 |
| Insurance: | $    - | | | | | | | | | | | | |
| Equipment, Liability, Etc. | $ 64,315.20 | 5,359.60 | 5,359.60 | 5,359.60 | 5,359.60 | 5,359.60 | 5,359.60 | 5,359.60 | 5,359.60 | 5,359.60 | 5,359.60 | 5,359.60 | 5,359.60 |
| Property Taxes | $ 35,520.00 | 2,960.00 | 2,960.00 | 2,960.00 | 2,960.00 | 2,960.00 | 2,960.00 | 2,960.00 | 2,960.00 | 2,960.00 | 2,960.00 | 2,960.00 | 2,960.00 |
| Bank Fees | $ 28,800.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 |
| IT | $ 13,000.00 | 1,500.00 | 1,500.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| Misc | $ 23,000.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 6,500.00 |
| Office Supplies/Postage | $ 2,400.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 |
| Janitorial | $ 1,800.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 |
| Business Utilities | $    - | | | | | | | | | | | | |
| Gas | $ 19,000.00 | 2,600.00 | 3,000.00 | 2,500.00 | 2,500.00 | 700.00 | 500.00 | 500.00 | 500.00 | 500.00 | 700.00 | 2,500.00 | 2,500.00 |
| Electric | $ 56,000.00 | 4,000.00 | 4,000.00 | 3,000.00 | 3,000.00 | 4,500.00 | 5,000.00 | 6,000.00 | 7,000.00 | 6,000.00 | 4,500.00 | 4,500.00 | 4,500.00 |
| Internet/Phone | $ 20,400.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 |
| Water | $ 3,700.00 | 350.00 | 350.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 |
| Repairs/Maintenance | $ 6,000.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| Rent | $ 205,906.39 | 17,800.75 | 17,800.75 | 18,125.48 | 18,125.48 | 18,125.48 | 16,561.21 | 16,561.21 | 16,561.21 | 16,561.21 | 16,561.21 | 16,561.21 | 16,561.21 |
| Equipment Leases | $ 178,544.40 | 14,878.70 | 14,878.70 | 14,878.70 | 14,878.70 | 14,878.70 | 14,878.70 | 14,878.70 | 14,878.70 | 14,878.70 | 14,878.70 | 14,878.70 | 14,878.70 |
| Attorney Fees | $ 6,750.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 1,000.00 | 1,000.00 | 2,500.00 |
| Accountant Fees | $ 7,000.00 | - | 1,500.00 | 1,500.00 | 1,500.00 | - | - | - | 2,500.00 | - | - | - | - |
| Capital Improvement Est. | $ 24,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 |
| Priority Tax Claims | $ 24,119.05 | 24,119.05 | - | - | - | - | - | - | - | - | - | - | - |
| Equity Payment | $ 237,688.80 | 19,807.40 | 19,807.40 | 19,807.40 | 19,807.40 | 19,807.40 | 19,807.40 | 19,807.40 | 19,807.40 | 19,807.40 | 19,807.40 | 19,807.40 | 19,807.40 |
| **Total Expenses** | $ 3,107,666.22 | $ 264,026.45 | $ 241,557.40 | $ 239,382.13 | $ 245,842.13 | $ 296,657.62 | $ 245,117.86 | $ 247,417.86 | $ 251,967.86 | $ 248,467.86 | $ 305,393.35 | $ 254,167.86 | $ 267,667.86 |
| **NET INCOME** | $ 146,143.78 | $ (26,076.45) | $ (13,957.40) | $ (21,882.13) | $ (6,782.13) | $ (47,357.62) | $ 14,482.14 | $ 32,632.14 | $ 38,182.14 | $ 41,682.14 | $ (15,243.35) | $ 56,432.14 | $ 94,032.14 |

**Docuplex, Inc**     **Case No. 22-10734-11**     **Liquidation Analysis**     **Exhibit C**

| ASSETS | Value** | | Liens | | Equity | |
|---|---|---|---|---|---|---|
| Inventory | $ | 40,000.00 | $ | 40,000.00 | $ | - |
| Fixtures, Furniture, and Equipment | $ | 1,128,850.00 | $ | 1,128,850.00 | $ | - |
| Accounts Receivable | $ | 194,118.95 | $ | 194,118.95 | $ | - |
| NW Mutual Life Policy | $ | 202,558.00 | $ | 202,558.00 | $ | - |
| Bank Account Balances | $ | 62,578.02 | $ | 62,578.02 | $ | - |
| Chevy Van | $ | 2,000.00 | $ | - | $ | 2,000.00 |
| Clawback Actions* | $ | - | $ | - | $ | - |
| TOTAL AVAILABLE EQUITY | | | | | | $2,000.00 |

| Chapter 7 Liquidation Calculation | | |
|---|---|---|
| Total Equity | $ | 2,000.00 |
| Chapter 7 Trustee Fees | $ | 500.00 |
| Chapter 7 Trustee Attorney Fees/Costs | $ | 1,500.00 |
| Estimated Costs of Sale** | $ | 200.00 |
| Subtotal | $ | (200.00) |
| Priority Claims | $ | 73,775.35 |
| Payment to Unsecured Creditors | $ | (73,975.35) |

\* The potential targets of the clawback actions appear to be insolvent. The primary target would be the
Debtor's principal, and a bankruptcy appears imminent for him. Other targets are college students and/or
a retired individual. The attorney fees alone would dwarf potential recoveries. In addition, the first $74,000
would have to be paid to priority claims. As such, the clawback actions do not appear to have much value. The
only other target was Equity Bank, but after discussions internally, Debtor does not believe such an action
would be successful.

\*\*Values are analyzed as of the Petition Date and are based on a liquidation.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF KANSAS

| In re: | |
|---|---|
| DOCUPLEX, INC. | CASE NO.:  22-10734-11 |
| DEBTOR. | |

## PLAN EXHIBIT D:
## DEFINITIONS

"Administrative Claim" means a claim under sections 503(b) of the Bankruptcy Code that is entitled to priority under section 507(a)(2) of the Bankruptcy Code, including any actual and necessary expenses of operating the business of Debtor or preserving the Estate incurred after the Petition Date, the fees and expenses of the Trustee, and the fees and expenses of the Debtor's professionals.

"Allowed Claim" means (a) any Claim, proof of which is filed with the Bankruptcy Court on or before the Claims Bar Dates, or which has been or hereafter is listed in the Schedules by Debtor as liquidated in amount and not disputed or contingent and which, in either case, is a Claim as to which no objection to the allowance thereof has been filed on or before the Claim Objection Deadline, or as to which any objection has been determined by Final Order of the Bankruptcy Court (allowing such Claim in whole or in part), or (b) a Claim that is allowed (i) in any contract, instrument, or other agreement entered into in connection with the Plan, (ii) in a Final Order, or (iii) pursuant to the terms of the Plan.  In accordance with section 502(d) of the Bankruptcy Code, a Claim held by any person that is subject to an Avoidance Action shall not be an Allowed Claim until such time as the avoidable transfer is returned, a final determination is made by the Bankruptcy Court that no avoidable transfer exists, or an agreement or settlement with respect thereto is reached between the Debtor and the Claimant.

"Avoidance Actions" means any and all claims and causes of action of Debtor as of the Effective Date, arising under the Bankruptcy Code, including, without limitation, Sections 544 through 551 and 553 thereof.

"Bankruptcy Case" or "Case" means the chapter 11 case initiated in the Bankruptcy Court by Debtor.

"Bankruptcy Code" or "the Code" means Title 11 of the United States Code, as amended.

"Bankruptcy Court" or "the Court" means the unit of the United States District Court for the District of Kansas known as the Bankruptcy Court for that District or such other court of competent jurisdiction exercising jurisdiction over Debtor's Chapter 11 case.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure prescribed by the Supreme Court and reported to Congress pursuant to 28 U.S.C. § 2075, as amended.

"Cash" means currency, check, draft, wire transfer and other similar forms of payment.

"Cash Collateral" shall have the meaning set forth in the Cash Collateral Order.

"Cash Collateral Order" means the Final Order Granting Debtor's Motion for Order Authorizing Interim Use of Cash Collateral and Payment of Adequate Protection, Doc. No. 74, together with any extensions thereto or modifications thereof.

"Claim" has the meaning set forth in § 101(5) of the Bankruptcy Code with respect to the Debtor.

"Claim Objection Deadline" means the date that is sixty (60) days after the Effective Date.

"Claimant" means any person, entity or governmental unit asserting a Claim against the Debtor.

"Confirmation" means the entry of the Confirmation Order on the docket in the Chapter 11 Case.

"Claims Bar Dates" shall have the meaning set forth in Section A.7 of the Plan.

"Confirmation Hearing" means the hearing to confirm the Plan.

"Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to § 1191 of the Bankruptcy Code.

"Debtor" means Docuplex, Inc.

"Disposable Income" means the income that is received by the Debtor not reasonably necessary to be expended for the maintenance or support of the Debtor, or for the payment of expenditures necessary for the continuation, preservation or operation of the business of the Debtor. For purposes of the Plan and in the interests of clarity and certainty, Disposable Income shall be defined as one-half (50%) of the Debtor's annual net income as reflected on the Debtor's final Income Statement (or Profit and Loss Statement), determined on a calendar year basis, with the first such calendar year being 2023 and continuing in 2024 and 2025 as set forth in more detail in the Plan.

"Disputed Claim" means a Claim against the Debtor that is listed as Disallow (or some variation thereof) on the attached Exhibit A, which is identified in the Plan as Disputed, which is not listed at all on Exhibit A, or to which Claim an Objection is filed prior to the deadline for voting on the Plan.

"Effective Date" shall have the meaning set forth in Section A.6 of the Plan.

"Estate" means the Estate created upon the commencement of the Debtor's Chapter 11 case pursuant to § 541(a) of the Bankruptcy Code.

"Exhibit" means the exhibits attached to the Plan.

"General Unsecured Claim" or "Unsecured Claim" means any Claim against Debtor, other than an Administrative Claim, Priority Claim, or Secured Claim.

"Jay" means Jay Ewy.

"Liens" means valid, enforceable, and perfected liens, mortgages, security interests, pledges, charges, encumbrances, or other legally cognizable security devices of any kind.

"Petition Date" means September 2, 2022, the date upon which Debtor filed its chapter 11 petition with the Bankruptcy Court.

"Plan" means this Plan of Reorganization, dated January 16, 2023, as may be amended or modified by the Debtor in accordance with the Plan, the Bankruptcy Code or the Bankruptcy Rules.

"Plan Period" means the period beginning the Effective Date, and ending three (3) years thereafter.

"Pro Rata" means, as of any distribution date, with respect to any Allowed Claim in any Class, the proportion that such Allowed Claim bears to the aggregate amount of all Claims, including Disputed Claims, in such Class.

"Trustee" means George Matthew Barberich, Jr., or his successor, the statutory subchapter V trustee.